## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

RACHELLE K.,[1]                          :    Case No. 2:25-cv-00588
                                         :
     Plaintiff,                          :    District Judge Michael H. Watson
                                         :    Magistrate Judge Caroline H. Gentry
vs.                                      :
                                         :
COMMISSIONER OF SOCIAL                   :
SECURITY,                                :
                                         :
     Defendant.                          :

## REPORT AND RECOMMENDATION[2]

Plaintiff's application for benefits is before this Court for the third time. Plaintiff

filed an application for Disability Insurance Benefits in April 2019. Plaintiff's claim was

denied initially and upon reconsideration. After a hearing at Plaintiff's request, the

Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits

because she was not under a "disability" as defined in the Social Security Act. The

Appeals Council denied Plaintiff's request for review of that decision, and Plaintiff filed

her first action with this Court.[3] The Court remanded the case to the Commissioner

under Sentence Four of 42 U.S.C. § 405(g) after the parties jointly moved for a remand.

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] *See* 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendation within the specified time period.

[3] Assigned to District Judge Sarah D. Morrison, Case Number 2:21-cv-04067.

The Appeals Council remanded the case pursuant to the District Court's order. A different ALJ held another hearing and again concluded that Plaintiff was not under a "disability" as defined in the Social Security Act. After the Appeals Council denied Plaintiff's request for review of that decision, Plaintiff filed her second action with this Court.[4] The Court again remanded the case to the Commissioner under Sentence Four of 42 U.S.C. § 405(g) after the parties jointly moved for a remand. The Appeals Council remanded the case pursuant to the District Court's order.

The same ALJ held a hearing and issued a third unfavorable decision in this case, concluding that Plaintiff was not under a "disability" as defined in the Social Security Act. Plaintiff then filed the present case, which is her third action in this Court.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision. For the reasons set forth below, it is recommended that the Court REVERSE the Commissioner's decision and REMAND for further proceedings.

## I.     BACKGROUND

Plaintiff asserts that she has been under a disability since March 18, 2018.[5] At that time, she was forty-four years old and was considered a "younger person" during

---

[4] Assigned to Chief Judge Algenon L. Marbley, Case Number 2:23-cv-03616.

[5] In her Statement of Errors, Plaintiff states that her disability began on May 11, 2016. (SE, Doc. No. 10 at PageID 1916.) This is consistent with Plaintiff's application for disability insurance benefits. (AR, Doc. No. 7-5 at PageID 236.) However the ALJ referenced an alleged disability onset date of March 18, 2018. (Decision, Doc. No. 7-16 at PageID 1333, 1335, 1355.) Because Plaintiff did not raise this issue, the undersigned will not address it further. However, the Commissioner should consider it upon remand.

the period at issue.[6] 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No.  7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-16 at PageID 1329-64), Plaintiff's Statement of Errors ("SE," Doc. No. 10), and the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.  STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of

---

[6] The period at issue begins on the alleged onset date of disability, which is either on May 11, 2016 or March 18, 2018, and ends on December 31, 2023, which is the date Plaintiff last met the insured status requirements of the Social Security Act. (AR, Doc. No. 7-19 at PageID 1547.)

Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647,

4

651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III. FACTS

### A. The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520. The ALJ made the following findings of fact:

Step 1: Plaintiff did not engage in substantial gainful activity during the period at issue from the alleged onset date of March 18, 2018 through the date last insured of December 31, 2023.

Step 2: She had the severe impairments of residuals of breast cancer, status-post mastectomy and chemotherapy, fibromyalgia, neuropathy, varicose veins, adjustment disorder with mixed anxiety and depressive features, and post-traumatic stress disorder.

Step 3: She did not have an impairment or combination of impairments that met or equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: "[Plaintiff] can occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds; can occasionally stoop,

5

kneel, crouch, and crawl; can frequently handle, finger, and feel; and must avoid workplace hazards such as unprotected heights and machinery. [Plaintiff] can understand, remember, and carry out simple tasks and instructions; can adapt to occasional changes in a routine work setting; with no strict production quotas or fast-paced work such as on an assembly line."

She was unable to perform any of her past relevant work.

Step 5: Through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed.

(Decision, Doc. No. 7-16 at PageID 1335-55.) These findings led the ALJ to conclude that Plaintiff did not meet the definition of disability. (*Id.* at PageID 1355.)

**B.     George Moses, D.O.**

Treating psychiatrist George Moses, D.O. completed a mental capacities assessment form in July 2020. (AR, Doc. No. 7-8 at PageID 930-31.) Dr. Moses checked boxes to indicate that Plaintiff was "unable to meet competitive standards" (defined on the form as "noticeable difficulty (e.g., distracted from job activity) from 21 to 40 percent of the workday or work week") in the work-related abilities of completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at PageID 930.) Dr. Moses checked boxes to indicate that Plaintiff was "seriously limited" (defined on the form as "noticeable difficulty (e.g., distracted from job activity) from 11 to 20 percent of the workday or work week") in the following areas: remembering work-like procedures; maintaining attention for two-hour segments; sustaining an ordinary routine without special supervision; working in

6

coordination with or proximity to others without being unduly distracted; accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; dealing with normal work stress; understanding, remembering, and carrying out detailed instructions; dealing with the stress of semi-skilled and skilled work; traveling in unfamiliar places; and using public transportation. (*Id.* at PageID 930-31.)

Dr. Moses indicated that Plaintiff had "limited but satisfactory" abilities (defined on the form as "noticeable difficulty (e.g., distracted from job activity) no more than 10 percent of the workday or workweek") in these areas: understanding, remembering, and carrying out very short and simple instructions; maintaining regular attendance; being punctual within customary tolerances; making simple work-related decisions; being aware of normal hazards and taking appropriate precautions; setting realistic goals and making plans independently of others; and interacting appropriately with the general public. (AR, Doc. No. 7-8 at PageID 930-31)

When asked to explain the limitations that he assessed, Dr. Moses wrote: "Unable to keep normal pace due to anxiety and what appears to be chemotherapy[-]related cognitive decline." (AR, Doc. No. 7-8 at PageID 931.) When asked to describe any additional reasons that Plaintiff "would have difficulty working at a regular job on a sustained basis," Dr. Moses wrote: "Neuropathy causes problems walking. She only drives for very short distances." (*Id.*)

Finally, Dr. Moses indicated that Plaintiff's impairments or treatment would cause her to be absent from work for approximately four days per month. (*Id.*) When

7

asked whether Plaintiff could manage benefits in her own best interest, Dr. Moses wrote: "Husband has always done this for her." (*Id.*)

The ALJ concluded that Dr. Moses' opinion was "not persuasive." (Decision, Doc. No. 7-16 at PageID 1352.) The ALJ explained that he discounted Dr. Moses' opinion because "the degree of limitations he assessed are not consistent with the evidentiary record as a whole, and are not supported by his own treatment notes (Exhibit 22F)." (*Id.*) By way of example, the ALJ cited Dr. Moses' observations in a June 2020 treatment note that "[Plaintiff's] anxiety was better, her energy was okay, and she was working outside in her glower [sic] bed in June 2020 (Exhibit 22F, pages 1-2)." (*Id.*) The ALJ also stated that Dr. Moses' opinion was "not consistent with the objective findings and overall assessment of neuropsychologist Dr. Trask (Exhibit 30F)." (*Id.*)

## IV.    LAW AND ANALYSIS

Plaintiff's sole assertion of error is that the ALJ erroneously evaluated the medical opinions of Dr. Moses. (SE, Doc. No. 10 at PageID 1922.) For the reasons set forth below, the undersigned Magistrate Judge finds this alleged error to be well-taken and therefore recommends that the District Judge reverse the ALJ's decision and remand this matter to the Commissioner.

### A.    Applicable Law

ALJs are required to analyze the persuasiveness of "all of the medical opinions" in the record. 20 C.F.R. § 404.1520c. A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20

C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claim after March 27, 2017, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) …." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) … the more persuasive the medical opinions … will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D.

9

Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v. Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[7] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

---

[7] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13, 2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning ... in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

**B.     The ALJ Reversibly Erred When Analyzing Dr. Moses' Opinion.**

Plaintiff argues that the ALJ improperly evaluated the medical opinion of Dr. Moses. (SE, Doc. No. 10 at PageID 1922-27.) Specifically, Plaintiff contends that the ALJ's analysis of the consistency and supportability factors was unsupported by substantial evidence. (*Id.*) Plaintiff argues:

11

> The ALJ's analysis selectively chose a single treatment session that grossly misrepresented the record as a whole. The ALJ also failed to adequately consider the full extent of support provided by Dr. Moses. Finally, the ALJ's consideration of the consistency factor was also very minimal and selective, not presenting an accurate view of the record as a whole.

(*Id.* at PageID 1924.) For the reasons discussed below, these arguments are well-taken.

### 1. The ALJ's analysis of the supportability factor is unsupported by substantial evidence.

The ALJ explained that Dr. Moses' opinion was not persuasive because it was "not supported by his own treatment notes (Exhibit 22F)." (Decision, Doc. No. 7-16 at PageID 1352.) The ALJ further explained: "For example, the doctor noted [Plaintiff's] anxiety was better, her energy was okay, and she was working outside in her glower [sic] bed in June 2020 (Exhibit 22F, pages 1-2)." (*Id.*) Assuming that the ALJ's explanation satisfied the mandatory articulation requirement for the supportability factor pursuant to 20 C.F.R. § 404.1520c(b)(2) and (c)(1), reversal is nevertheless warranted because the ALJ's conclusion that Dr. Moses' opinion was "not supported by his own treatment notes" is unsupported by substantial evidence.

It is true that Plaintiff reported improved anxiety and "ok[ay]" energy during her June 2020 follow-up visit with Dr. Moses. (AR, Doc. No. 7-8 at PageID 933.) Upon a mental status examination, Dr. Moses documented some normal findings, such as an appropriate mood and affect, clear and linear thought processes, intact insight and judgment, and no apparent impairment of recent or remote memory. (*Id.* at PageID 937-38.) However, the ALJ failed to consider Plaintiff's complaint of continued insomnia. (*Id.* at PageID 933.) The ALJ also failed to consider some abnormal findings

12

documented by Dr. Moses, including "irritable at times" and "limited" attention span and concentration. The ALJ also did not consider the fact that Dr. Moses continued Plaintiff's Lexapro dosage and increased her dosage of Doxepin. (*Id.* at PageID 938-939.)

Defendant contends: "Plaintiff argues that the ALJ selectively chose a single treatment session that misrepresented the record as a whole. Plaintiff's argument fails. The ALJ clearly stated that it was an example (Tr. 1312)." (Mem. In Opp., Doc. No. 12 at PageID 1935-36.) Defendant then summarizes Dr. Moses' treatment notes and argues that they "do not support his unduly restrictive opinion." (*Id.* at PageID 1936.) The undersigned disagrees.

Defendant correctly points out that on most occasions, Dr. Moses documented some normal mental status findings, including clear and linear thought processes, no overt delusions, intact insight and judgment, and an appropriate fund of knowledge,. (*See, e.g.,* AR, Doc. No. 7-7 at PageID 823, 833, 852-53; Doc. No. 7-8 at PageID 937-38, 948-49, 959-60; Doc. No. 7-15 at PageID 1312-13; Doc. No. 7-21 at PageID 1687-88, 1701-02, 1712-13.) Dr. Moses also documented an appropriate mood and affect on several occasions. (AR, Doc. No. 7-7 at PageID 823, 833; Doc. No. 7-8 at PageID 949, 960; Doc. No. 7-15 at PageID 1313; Doc. No. 7-21 at PageID 1688, 1702.)

However, the ALJ did not acknowledge many abnormal findings documented in the treatment notes when he discounted Dr. Moses' opinion. Dr. Moses documented abnormalities such as a depressed, anxious, irritable, and/or frustrated mood on several occasions. (AR, Doc. No. 7-7 at PageID 824, 834, 853; Doc. No. 7-8 at PageID 938;

Doc. No. 7-21 at PageID 1713, 1725.) Dr. Moses also noted impaired recent memory and/or impaired or poor attention span and distractibility on many occasions. (AR, Doc. No. 7-7 at PageID 824, 834; Doc. No. 7-8 at PageID 938, 949; Doc. No. 7-21 at PageID 1702, 1713, 1724-25.) There were only a few occasions when Dr. Moses indicated no impairment of memory, attention span, or concentration. (AR, Doc. No. 7-7 at PageID 853; Doc. No. 7-8 at PageID 960; Doc. No. 7-15 at PageID 1313; Doc. No. 7-21 at PageID 1688.) These abnormal findings do provide support for Dr. Moses' opinion.

Dr. Moses' comments in his report also support his opinion. When asked to explain his assessed limitations, Dr. Moses wrote: "Unable to keep normal pace due to anxiety and what appears to be chemotherapy[-]related cognitive decline." (*Id.* at PageID 931.) When asked to describe additional reasons why Plaintiff would find it difficult to work at a regular job on a sustained basis, Dr. Moses wrote: "Neuropathy causes problems walking. She only drives for very short distances." (*Id.*) Although these statements also support Dr. Moses' opinion, the ALJ did not address them.

The ALJ also selectively characterized some of Dr. Moses' treatment notes and ignored abnormal findings related to Plaintiff's cognitive complaints. For example, in his chronological summary of Plaintiff's treatment for her mental health complaints, the ALJ cited just one progress note from Dr. Moses that documented poor recent memory and limited attention span and concentration in July 2020. (Decision, Doc. No. 7-16 at PageID 1346 (citing AR, Doc. No. 949).) Referring to several other notes dated between May 2020 and May 2022, the ALJ cited some subjective complaints, many normal mental status findings, and some examination abnormalities. (*Id.* at PageID 1345-48.)

14

But the ALJ did not acknowledge Dr. Moses' notes that found, on many occasions, that Plaintiff had impaired recent memory and/or an impaired or poor attention span and distractibility. (*Compare* Decision, Doc. No. 7-16 at PageID 1345-48, *with* AR, Doc. No. 7-7 at PageID 824, 834; Doc. No. 7-8 at PageID 938, 949; Doc. No. 7-21 at PageID 1702, 1713, 1724-25.)

The ALJ also ignored most of these findings from Dr. Moses when he compared Plaintiff's subjective complaints to the medical evidence. (Decision, Doc. No. 7-16 at PageID 1345-48.) The ALJ concluded that Plaintiff's mental health medications were "relatively effective in controlling [her] symptoms" and that "treatment providers have consistently failed to appreciate any psychological abnormalities on several occasions (Exhibits 2F, pages 47-48, 50; 3F, pages 80-81; 22F, pages 6-7; 32F, pages 6-7)." (Decision, Doc. No. 7-16 at PageID 1345.) The ALJ further stated: "Furthermore, the record is replete with documentation that her memory and overall mentation was normal and intact (Exhibits 3F, page 80; 4F, page 48; 6F, pages 75, 90; 7F, page 12; 22F, pages 6-7; 25F, page 3)." (Decision, Doc. No. 7-16 at PageID 1345.)

The ALJ supported both statements by citing only the June 2020 progress note—which, contrary to the ALJ's description, *did* document the psychological abnormalities of limited attention span and concentration, and a mood that was "irritable at times." (AR, Doc. No. 7-8 at PageID 938.) The ALJ also ignored Dr. Moses' other progress notes finding impaired recent memory and/or an impaired or poor attention span and distractibility on many occasions. (*See* AR, Doc. No. 7-7 at PageID 824, 834; Doc. No. 7-8 at PageID 938, 949; Doc. No. 7-21 at PageID 1702, 1713, 1724-25.)

15

Although this evidence supported Dr. Moses' opinion, the ALJ did not address or acknowledge it when he discounted that opinion. The Court recognizes that ALJs need not discuss each and every piece of evidence and finding in the record. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014). Nevertheless, the ALJ's "factual findings as a whole" must show that he "implicitly resolved the conflicts in the evidence." *Id.* Here, the ALJ's failure to acknowledge significant evidence that supported Dr. Moses' opinion leads the Court to conclude that the ALJ did not resolve conflicts in the evidence, as he was required to do. Further, the ALJ's apparent failure to acknowledge evidence that contradicts his conclusion, combined with his mischaracterization of the evidence that he chose to cite, signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723-23 (citing *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis); *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was "selective in parsing the various medical reports")).

Accordingly, the ALJ's conclusion that Dr. Moses' opinion was unsupported is itself unsupported by substantial evidence. This constitutes reversible error.

### 2. The ALJ's analysis of the consistency factor is unsupported by substantial evidence.

The ALJ also stated that he was unpersuaded by Dr. Moses' opinion because the limitations that he identified were "not consistent with the evidentiary record as a whole." (Decision, Doc. No. 7-16 at PageID 1352.) In support of this conclusion, the

ALJ cited one example: "[T]he doctor's opinion is not consistent with the objective findings and overall assessment of neuropsychologist Dr. Trask (Exhibit 30F)." (*Id.*) The ALJ did not cite to specific evidence from Dr. Trask's report or explain how it conflicted with Dr. Moses' opinion.

The ALJ's vague references to "the evidentiary record as a whole" and "the objective findings and overall assessment of neuropsychologist Dr. Trask," without further explanation, fail to articulate the reasons for his conclusion and "deprive[] the Court of the ability to conduct any meaningful review." *Edwards v. Comm'r of Soc. Sec.*, No. 3:22-CV-00597, 2023 WL 2988373, at *15 (N.D. Ohio Mar. 10, 2023), *report and recommendation adopted sub nom. Edwards v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-597, 2023 WL 3866333 (N.D. Ohio June 7, 2023) (citing *Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09cv564, 2011 WL 549861, at *5 (S.D. Ohio Feb. 8, 2011) (Barrett, D.J.)). Thus, the consistency factor mandated by 20 C.F.R. § 404.1520c(b)(2) and (c)(2) was not satisfied.

Moreover, even assuming that the ALJ's explanation did satisfy the mandatory articulation requirement with respect to the consistency factor, Dr. Trask's October 2022 neuropsychological evaluation report is at most partially inconsistent with Dr. Moses' opinion. The ALJ summarized Dr. Trask's opinion as finding that Plaintiff "performed broadly within expectations for basic attention, verbal reasoning, working memory, processing speed, language skills, visuospatial skills and psychomotor speed." (Decision, Doc. No. 7-16 at PageID 1347, 1351 (citing AR, Doc. No. 7-15 at PageID 1284).) But other statements in Dr. Trask's report support Dr. Moses' opinion.

17

As the ALJ acknowledged, Dr. Trask explained that "the results of the evaluation *were unlikely to be a valid representation* of [Plaintiff's] cognitive functioning *and should be interpreted with caution* given her scores on multiple performance validity measures showed she was not able to fully engage with the assessment process." (Decision, Doc. No. 7-16 at PageID 1347-48, 1351 (citing AR, doc. No. 7-15 at PageID 1283-84).) Dr. Trask reported that Plaintiff performed "significantly below expectation on performance validity measures, suggesting inconsistent task engagement." (AR, Doc. No. 7-15 at PageID 1283.) Dr. Trask explained that "[d]ifficulty with task engagement can be due to a number of factors and is often not volitional." (*Id.* at PageID 1284.) Dr. Trask reached the following conclusions about Plaintiff's condition:

> In this case, her pattern of responses on personality measures was suggestive of severe emotional distress (severe depression, anxiety, and broad neurobehavioral concerns), which can impede both cognitive efficiency and one's ability to fully engage in neuropsychological testing. Additionally, her profile on a comprehensive measure of personality and psychological functioning indicated her mood symptoms may tend to manifest physiologically; as such, she may not always recognize the impact of emotional distress on her functioning. Thus, at this time, the most likely contributing factors to [Plaintiff's] reported cognitive and functional difficulties include clinically significant psychological distress, severely disrupted sleep (i.e., difficulty falling and staying asleep, sleeping for only 30-60 minutes at a time), daytime fatigue, and chronic pain. With targeted treatment of these modifiable factors, she may see improvement in cognitive functioning.

(*Id.*) The ALJ failed to consider whether this portion of Dr. Trask's report—including her conclusions about the effects of Plaintiff's emotional distress on her functioning— was consistent with Dr. Moses' opinion.

Additionally, the ALJ ignored other evidence that is arguably consistent with Dr. Moses' opinion. For example, the ALJ failed to consider the February 2020 mental health assessment report from Lorraine Oliver, L.P.C.C. that documented depression, tearfulness, difficulty with serial 7s and serial 3s testing, and impaired immediate recall. (AR, Doc. No. 7-7 at PageID 801-06.) The ALJ did acknowledge a January 2020 cognitive-linguistic skill evaluation report in the medical evidence summary of the RFC analysis. (Decision, Doc. No. 7-16 at PageID 1344.) But the ALJ failed to consider the consistency of this report—which documented a mild cognitive disorder, mild attention deficits, moderate language deficits, and *severe* memory impairments—with Dr. Moses' opinion. (*See* AR, Doc. No. 7-8 at PageID 916-19 (emphasis added).)

The ALJ also failed to consider the consistency of Dr. Moses' opinion with the findings and opinion of consultative psychologist Dr. Barwick. Notably, during the August 2019 consultative evaluation, Plaintiff complained of significant memory issues and "expressed concern about work limitations, including remembering work roles, tracking conversations, and duties …." (AR, Doc. No. 7-7 at PageID 738-39.) Dr. Barwick reported that Plaintiff presented as primarily depressed, "displayed limited energy to complete the evaluation process," and exhibited below-normal intellectual functioning. (*Id.* at PageID 740.) According to Dr. Barwick, although Plaintiff's performance on short-term memory tasks "was not suggestive of difficulty remembering instructions," her performance on a verbal reasoning task did suggest "difficulty understanding complex instructions." (*Id.* at PageID 741.) Dr. Barwick also opined that Plaintiff "had difficulty completing tasks assessing attention during the evaluation which

19

suggests difficulty with concentration and focus." (*Id.*) As for Plaintiff's ability to deal with normal work pressures, Dr. Barwick opined:

> [Plaintiff] presented as emotionally overwhelmed when discussing current pressures which may impact her mood stability in a competitive work setting. She reported problems managing pressure in daily activities. Her presentation was indicative of cognitive limitations which may negatively impact her ability to manage normal work pressures. She did not describe a history of difficulty managing normal pressure in work settings but she has not worked since undergoing cancer treatment.

(*Id.* at PageID 742.)

The undersigned is unpersuaded by Defendant's argument that "Plaintiff essentially disagrees with how the ALJ decided to weigh differing medical opinions, 'which is clearly not a basis for . . . setting aside the ALJ's factual findings.'" (Mem. In Opp., Doc. No. 12 at PageID 1937 (citing *Mullins v. Sec'y of Health & Hum. Servs.*, 836 F.2d 980, 984 (6th Cir. 1987).) The ALJ's failure to acknowledge significant evidence in the record that either supports or is consistent with Dr. Moses' opinion leads the undersigned to conclude that the ALJ did not resolve conflicts in the evidence. Instead, the ALJ's apparent failure to consider evidence that contradicts his conclusions signifies an impermissibly selective review of the record. *See Gentry*, 741 F.3d at 723; *Germany-Johnson*, 313 F. App'x  at 777 (6th Cir. 2008). Further, the undersigned concludes that the ALJ's analyses of the consistency and supportability factors with respect to Dr. Moses' opinion are not supported by substantial evidence. This, too, constitutes reversible error and provides another reason why the case should be remanded.

20

## V.    REMAND

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.,* 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the medical opinion evidence, and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her application for Disability Insurance Benefits should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1.    Plaintiff's Statement of Errors (Doc. No. 10) be GRANTED;

2.    The Court REVERSE the Commissioner's non-disability determination;

3.    No finding be made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.    This matter be REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.    This case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge


**DEADLINE TO FILE OBJECTIONS**

In accordance with Rule 72(b)(2) of the Federal Rules of Civil Procedure, any party may file and serve specific written objections to this Report and Recommendation ("R&R") **within fourteen (14) days** after being served with a copy. A party may respond to another party's objections **within fourteen (14) days** after being served with a copy. If necessary, the objecting party must promptly arrange for transcribing the record, or whatever portions of it to which the parties agree or the Magistrate Judge considers sufficient. If proper objections are timely filed, then the District Judge will conduct a de novo review of the challenged portion(s) of the R&R. Failure to file timely objections may forfeit rights on appeal. *See U.S. v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

22